IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30384
Summary Calendar
_____


JAMES C. BARNES, JR.,

                                        Plaintiff-Appellant,

                        versus

UNITED STATES OF AMERICA,

                                        Defendant-Appellee.

_____

            Appeal from the United States District Court for
                 the Eastern District of Louisiana
                          (96-CV-1764-1)
_____
                      September 17, 1997

Before REAVLEY, KING and DAVIS, Circuit Judges.

REAVLEY, Circuit Judge:[*]

    James Barnes appeals the dismissal of his suit against the

United States brought under the Suits in Admiralty Act (SAA)[1] and

the Federal Tort Claims Act (FTCA).[2]  The district court

dismissed the suit for lack of jurisdiction.  We affirm.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]  46 U.S.C. §§ 741-52.

[2]  28 U.S.C. §§ 1346(b), 2671-2680.

In 1987 the Coast Guard issued Barnes a five-year license to operate a vessel of up to 300 tons. In 1990, the license was upgraded or "endorsed" to allow him to operate vessels of up to 500 tons. Barnes believed that the 1990 endorsement gave him a license with a term of five years running from the date of the endorsement, so at the end of 1994 he applied for routine renewal of his license. The Coast Guard explained that the license had expired in 1992, charged him in an administrative proceeding with operating without a license, and eventually issued him a warning.

Barnes claims that the Coast Guard negligently failed to follow its own regulations and renew his license, and negligently misrepresented to him that the 500-ton license had a five-year term running from the date of the 1990 endorsement. As a result of this alleged negligence, Barnes was, according to his complaint, forced to reapply for a license, "a process which required approximately a year of study and testing. During this period of time, he was for all practical purposes unemployed."

The district court properly dismissed the FTCA claim because no formal rejecton was received from the Coast Guard and Barnes did not wait the full six months, after the filing of his claim, to file suit in federal court under the FTCA, as that Act

requires.[3]  The district court therefore lacked jurisdiction to hear the claim.[4]

The remaining question is whether the district court had admiralty jurisdiction over the SAA claim.  As we have explained, the SAA does not create any new substantive rights.[5]  By its terms it allows suit against the United States where "a proceeding in admiralty could be maintained" against a private party.[6]  Hence, it waives sovereign immunity of the United States for claims that are otherwise within the admiralty jurisdiction of the federal courts.  Stated another way, it "merely provides a jurisdictional hook upon which to hang a traditional admiralty claim. . . .  [I]f appellant's claims are ones which would fall under general admiralty jurisdiction 'if a private person or property were involved' then, by way of [the SAA], the United States has waived sovereign immunity as to those claims."[7]

This case falls within the federal district court's admiralty jurisdiction if a two-part test is met.  "[T]he court's admiralty jurisdiction will attach in tort cases if the alleged

---

[3]  *See* 28 U.S.C. § 2675(a); *Gregory v. Mitchell*, 634 F.2d 199, 203-04 (5th Cir. 1981).

[4]  *Id.*

[5]  *E.g.*, *Martin v. Miller*, 65 F.3d 434, 438 (5th Cir. 1995).

[6]  46 U.S.C. § 742.

[7]  *Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 444-45 (5th Cir. 1982) (quoting 46 U.S.C. § 742).

wrong occurs on navigable waters (situs) *and* bears a significant relationship to traditional maritime activity (nexus)."[8] The Supreme Court has described the first component of the two-part test -- the situs or locality test -- as calling on the court to "determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water."[9]

We agree with the district court that the situs test is not met. The alleged wrongful conduct and consequences of that conduct occurred on land. The processing of Barnes' license applications was a land-based activity. Barnes conceded that the Coast Guard's alleged negligent misrepresentation took place on land. The injuries Barnes suffered -- loss of income, unemployment, administrative proceedings and warning from the Coast Guard, and retesting and reapplication for a new license -- were essentially land-based as well.

We have recognized that land-based activities which "directly produced a major injury on navigable waters," as where a gun was fired on land and injured a plaintiff on a vessel, can

---

[8] *Kuehne & Nagel (AG & Co.) v. Geosource, Inc.*, 874 F.2d 283, 288 (5th Cir. 1989) (emphasis in original); *see also Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268 (1972).

[9] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

confer admiralty jurisdiction.[10]  Again, however, we agree with the district court that the injury here cannot fairly be described as occurring on navigable waters.  The injury, if any, was imposed on land, and some consequences followed while plaintiff intended to be afloat.

The most analogous Fifth Circuit case we find in *Kuehne & Nagel*.  Plaintiff Kuehne & Nagel contracted with an affiliate of defendant Geosource to transport cargo on land and sea from Europe to the Middle East.  When the cargo could not be unloaded in Turkey as planned, Kuehne & Nagel sued Geosource, claiming that Geosource had fraudulently induced Kuehne & Nagel to contract with its affiliate, and claiming damages consisting of the costs of making alternative arrangements to transport the cargo.  We concluded that "the injury, if any, that occurred on navigable waters was too remote from the tortious act to meet the situs requirement for admiralty jurisdiction," reasoning that the alleged misrepresentations inducing the contracts had occurred on land and that "the misrepresentations had their desired 'effect' on land when they prompted Kuehne & Nagel to sign the contracts of affreightment."[11]  The facts of our case are of course quite different, but employing similar reasoning, the alleged misrepresentation occurred on land, and the effect of the alleged

_____

[10] *Kuehne & Nagel*, 874 F.2d at 289.

[11] *Id*.

misrepresentation occurred on land as well, when Barnes did not apply for a renewal of his license in 1992 and was forced to secure a new license.

Barnes cites us to *Carroll v. Protection Maritime Ins. Co.*[12] In that case the plaintiffs, seamen and fishermen, had brought personal injury claims and claimed the defendant insurance companies had then tortiously interfered with plaintiffs' contractual and advantageous business relations, by notifying vessel owners that the insurers would not insure the plaintiffs or would only insure them at high premiums. The plaintiffs claimed that as a result of this "blacklisting" they were terminated from their jobs and could not obtain new jobs. The First Circuit held that the tortious interference claims were within the district court's admiralty jurisdiction. It reasoned that the impact of the defendants' actions "was felt in the operations of the affected vessels at sea," and that "[t]he tort alleged in this case seems to us so interwoven with present and potential maritime contractual relationships -- traditional concerns of admiralty -- as to fall within that jurisdiction."[13] The court described its ruling as recognizing an "exception to the locality test."[14]

---

[12] 512 F.2d 4 (1st Cir. 1975).

[13] *Id*. at 8-9.

[14] *Id*. at 9.

6

Whether or not *Carroll* is distinguishable on its facts, it is not the law of this circuit. *Kuehne & Nagel* declined to follow *Carroll*, and disagreed with *Carroll* to the extent it holds that "a party to a contract with strong maritime implications" need not also "satisfy *Executive Jet's* situs requirement when seeking to predicate jurisdiction on a maritime tort."[15]

AFFIRMED.

---

[15] *Kuehne & Nagel*, 874 F.2d at 289. *See also J. Lauritzen A/S v. Dashwood Shipping, Ltd.*, 65 F.3d 139, 143 (9th Cir. 1995) (following *Kuehne & Nagle*, declining to follow *Carroll*, and describing *Carroll* as against the great weight of case law.)